# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1306WMJ

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Appellee, | * | Appeal from the |
| | * | United States District Court |
| v. | * | for the Western District |
| | * | of Missouri, Southwestern |
| EUGENE C. SAUNDERS, | * | Division |
| | * | |
| Appellant. | * | [UNPUBLISHED] |

_____

Submitted: June 9, 1998
Filed: August 24, 1998

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit
Judges, and PANNER[1], District Judge

_____

PANNER, District Judge.

Eugene Saunders appeals from his conviction for conspiracy to distribute cocaine base. He challenges the sufficiency of the evidence, raises various evidentiary issues, and contends that the district court violated his rights to confront and cross-examine his accusers. He also argues that the district court erred in refusing to give several of his requested jury instructions. We affirm.

_____

[1]The Honorable Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

DISCUSSION

I. Sufficiency of the Evidence

In December 1996, Stormy Francis, a crack cocaine user, informed Jasper County Drug Task Force Officer Tom McCullah that defendant was a supplier of crack cocaine. Francis assisted in a controlled purchase of the drug. By dialing his pager number from a pay phone, Francis paged defendant to place a drug order. The pager was registered to Monica Triplett, who, according to Francis, delivered cocaine for defendant. Co-defendant James Barr, who had previously delivered drugs to Francis on defendant's behalf, returned the page by calling Francis using defendant's cellular phone.

A few moments later, Barr and co-defendant Keith Brown arrived in a car. Francis testified that Brown had also previously delivered drugs to her for defendant. The controlled delivery was executed. Later, the substance was confirmed to be crack cocaine. Francis testified that during the delivery, she observed Barr and Brown in possession of a large amount of cocaine powder and crack cocaine packaged in small plastic bags.

Police attempted to arrest Barr and Brown and a high-speed chase ensued. During the chase, a large number of small plastic bags containing cocaine powder and crack cocaine were thrown from the car. The chase ended when the car crashed. Barr was found with $1,800, $200 of which Francis had just given him. A pager and cellular phone were also in the car.

Francis testified that defendant had been her main supplier of crack cocaine since the summer of 1996. She described several specific instances in which she purchased crack cocaine directly from defendant, including the night before she contacted McCullah. She also identified several people defendant used to make deliveries.

McCullah testified that records show that during the car chase, a call was placed from the cellular phone to defendant's residence. Brown testified that during the chase, Barr called defendant to tell him that "Stormy set us up." The cellular phone service was terminated later that day.

Cheryl Stevens, a.k.a. Cheryl Harbin, testified that she knew defendant and had seen him selling crack cocaine. She did not specify a date. She also testified that she had seen him with a large amount of crack cocaine and large amounts of cash. She admitted that she was currently on probation for selling cocaine, had tested positive for cocaine use while on probation, and had written bad checks.

Brown testified that he had sold crack cocaine on defendant's behalf in December 1996 and that he had witnessed defendant answering pages and selling crack cocaine. He also observed defendant give Barr a large amount of drugs and later saw Barr sell drugs and give the proceeds from the sales to defendant. Brown witnessed defendant give Barr the drugs which Barr then sold to Francis. Brown testified that defendant had given him a pager with which to conduct drug sales. The pager he described was similar to the one confiscated from the car.

We review the denial of a motion for judgment of acquittal based upon sufficiency of the evidence by examining the evidence in the light most favorable to the government. United States v. Hester, 140 F.3d 753, 760 (8th Cir. 1998). To prevail in a conspiracy trial, the government must prove that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy. United States v. Bass, 121 F.3d 1218, 1220 (8th Cir. 1997).

Defendant exposed potential weaknesses or biases in several of the government's witnesses. In addition to Francis's and Stevens's drug histories, defendant showed that Brown's testimony contradicted a previous statement regarding this case that Brown

3

had given to investigators. Defendant also showed that Francis was paid money for her participation. Nonetheless, the jury credited the testimony of the government's witnesses. Looking at the evidence in a light most favorable to the verdict, and without weighing the evidence or assessing the credibility of the witnesses, see, e.g., United States v. Hawkey, 1998 WL 331182, at *1 (8th Cir. June 24, 1998), we conclude that the evidence was sufficient to convict defendant of conspiring to distribute crack cocaine.

II. Evidentiary Issues

A. Sixth Amendment Right to Confront and Cross-Examine

Defendant argues that the trial court erred in excluding testimony from Stevens regarding a shooting incident between her son and defendant. The district court sustained the government's objection to this testimony. In his offer of proof, defendant stated that Stevens's son shot defendant with a handgun and that there were pending first-degree assault charges and armed criminal action charges against Stevens's son.. Defendant argues that this evidence would have exposed Stevens's bias against him.

Although the Sixth Amendment's Confrontation Clause guarantees defendant the opportunity for effective cross-examination of witnesses against him, including inquiry into the witnesses' motivation and bias, it does not

> prevent a trial judge from placing limits on defense counsel's cross-examination of government witnesses. . . . [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant.

United States v. Willis, 997 F.2d 407, 415 (8th Cir. 1993)(citing Delaware v. Van Arsdall, 475 U.S. 673, 678 (1986)). Absent a clear abuse of discretion and a showing

4

of prejudice to defendant, a district court's ruling limiting cross-examination will not be reversed.  Id.

We need not decide whether the district court erred when it excluded the evidence that Stevens's son shot defendant because any error was harmless under the five factors in Van Arsdall.  See Harrington v. Iowa, 109 F.3d 1275, 1279 (8th Cir. 1997)(listing factors:  (1) importance of witness's testimony to entire case; (2) whether testimony was cumulative; (3) whether corroborating or contradicting evidence existed; (4) degree of cross-examination actually permitted; and (5) overall strength of government's case).

### B.  Large Amounts of Money

Defendant argues that the district court erred in admitting Stevens's testimony that she saw defendant with large amounts of cash, because such testimony was irrelevant and extremely prejudicial.  We reject defendant's argument.  See, e.g., Bass, 121 F.3d at 1221(noting in *dicta* that presence of large amounts of cash often serves to strengthen inference that defendant was distributing contraband).

### C.  Barr's Positive Cocaine Test

Defendant appeals from the district court's failure to allow evidence showing that shortly after his arrest, Barr tested positive for cocaine.  Defendant argues that if the jury had known that Barr was using cocaine, it would have determined that the cocaine at issue was Barr's and not defendant's.  The fact that Barr had cocaine in his system neither proves nor disproves that defendant was the supplier.  Without other evidence as to the source of the cocaine, the district court properly excluded this evidence.

### III.  Jury Instructions

Defendant appeals from the district court's failure to give four of his requested instructions.  A defendant requesting a specific instruction is "entitled to an instruction that conveys the substance of his request if his request is timely, it is supported by

evidence in the case, and is a correct statement of the law." <u>United States v. Tucker</u>, 137 F.3d 1016, 1036 (8th Cir. 1998). As long as the instructions given adequately convey the law, the defendant is not entitled to any particular formulation. <u>Id.</u>

A. Defendant's Instructions "D," "E," and "F"

These three instructions would have apprised the jury that mere presence at the crime scene or mere knowledge that a crime is being committed is insufficient to find defendant guilty of a conspiracy charge. The court rejected these instructions, preferring an instruction containing the following:

> You should understand that merely being present at the scene of an event, or merely acting in the same way as others or merely associating with others, does not prove that a person has joined in an agreement or understanding. A person who has no knowledge of a conspiracy but who happens to act in a way which advances some purpose of one, does not thereby become a member.

The given instruction, while not as explicit as defendant's requested instructions in some respects, adequately and fairly informed the jury of the law relevant to the case. The district court did not err by refusing to give defendant's requested instructions.

B. Defendant's Requested Instruction "A"

This instruction would have informed the jury that Brown was facing a mandatory minimum sentence and that the prosecutor could file a motion to reduce that sentence based on Brown's substantial assistance. It also stated that Brown hoped to receive a reduced sentence in return for his cooperation with the government in defendant's case. The instruction made clear that if the government filed a motion to reduce the sentence, the ultimate decision was up to the judge.

The district court rejected this instruction and instead relied on two others. First, the court instructed the jury to consider a number of items in assessing a witness's credibility, including any motives that the witness may have for testifying a certain way.

Next, the court informed the jury that Brown was party to a plea agreement with the government and that depending on the extent of his cooperation, the government had agreed to move for a downward departure pursuant to the United States Sentencing Guidelines. It further informed the jury that it could give Brown's testimony such weight as it thought it deserved. The jury was told that it was to determine whether Brown's testimony may have been influenced by the plea agreement or the government's promise. The instruction made no mention of the mandatory minimum sentence Brown faced.

Defendant maintains that the absence of a reference to the mandatory minimum sentence was prejudicial. Defendant's theory is that the jury would have discredited Brown's testimony if it had known how much he had at stake. We disagree. The instructions given adequately informed the jury of Brown's motives for testifying and correctly described the applicable law. The district court did not err in refusing to give the requested instruction.

Affirmed.
A true copy.
    Attest:
        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.